Crawford v. Brown is our next case for argument. Ms. Talbot. Yes, Your Honor. May it please the Court. This Court should reverse the District Court's decision because there is some evidence to show that Crawford engaged in an unauthorized financial transaction. The facts of the case show that Offender Wolf went to prison intelligence officers and he admitted to them that he had done drugs, specifically K2 and Suboxone, which he received from Offender Crawford, and he paid Offender Crawford $400 for the drugs. And the way he made the payment was that he made out a $400 check from his own prison J-Pay account. He made that out to his aunt, but he sent it to Offender Crawford's mother, and then Crawford's mother endorsed the check. So because of this payment, we know that Offender Crawford was engaged in the financial transaction. The Indiana prison system forbids engaging in unauthorized financial transactions, and this is in the Adult Offender Code. And there's an inmate trust fund policy, which states that offenders found to be attempting or completing financial transactions, including sending of monies from one offender to another, or sending of monies from the family of friends of one offender to another, shall be subject to disciplinary action. The district court erroneously interpreted this to mean only three things, that inmate-to-inmate transactions were not allowed, family-of-one inmate-to-another inmate was not allowed, and family-to-family was not allowed. It's unknown why the district court chose to limit it in such a way and why it didn't include any other transaction, because under the district court... Counsel, let me suggest one hypothesis, which is that telling prisoners that what is unauthorized is prohibited doesn't really tell them very much about what's allowed and what's prohibited. Your Honor, it says at the beginning of the policy that whatever is not authorized is prohibited. So basically, whatever transaction they want to do should receive prior authorization. There's actually no transaction involving Mr. Crawford, right? There is no direct transaction. From Wolf to Crawford's... Wolf to his mother to Crawford's mother, right? Correct, that is a transaction, yes. In applying the sum evidence standard, we've got here two offenders who tell prison authorities two contradictory stories. What is the non-arbitrary basis for choosing to accept Wolf's story and not Crawford's here? Your Honor, the disciplinary hearing officer is the fact finder, and the disciplinary officer can choose to believe one offender over the other. Did he ever hear from Wolf? The disciplinary officer? I don't think that Wolf testified, but Wolf made the statement to the intelligence officers, and they wrote down his statement, and that's the investigation report. And, of course, there's a separate conduct report, and these two are basically the same, and those are presented to the disciplinary hearing officer. So how do you rationally choose whom to believe in this case? Your Honor, it's just a determination of the disciplinary hearing officer. He can choose to believe one or the other. But what's important here is, of course, actually Wolf exposed himself to liability. I mean, that's why his statement should not be suspect, because when he said that he actually did drugs that he received from Alexander Crawford, he exposed himself to liability. And because of that, he could be written up in the prison system, and he could lose credit time, or he could be potentially demoted from one credit class to the other. So that's why his statement is not suspect. There is no reliability problem with his statement. So that's most probably why the disciplinary hearing officer chose to believe Wolf's statement over Crawford's statement. Ms. Talbot, it's Judge Scudder. I've got a question for you about what you think the record shows. The report of conduct here talks about the or describes the mailing of the check to Crawford's mother. Does the record show whether the officer who prepared the report actually examined the underlying documents, or do you think it's just reporting what Wolf said? From the record in this case, it's not entirely clear from what I remember. But, well, one would think or one would hope that they actually examined the documents. Well, yeah. I mean, there's sentences that suggest that. I just can't tell. I mean, for example, the last sentence on Appendix Page 7 says the check was mailed to Becky Crawford's address, and she signed the check. That sounds like somebody's examined the check, but it's also, alternatively, it's possible that that's what Wolf told the officer. Correct, Your Honor. Yes. Of course, we don't know from this record what exactly happened. But because of the standard here, there only has to be some evidence to show that this is what happened. And we don't have to refute every possible scenario. As long as there's some evidence in the record to sustain or to affirm the disciplinary hearing officer's judgment, then the court must do that. So not every possible scenario must be refuted. In this case, there's a – Kruppender Crawford states that there's unconstitutional vagueness here because he was not unnoticed as to what was prohibited. However, he was unnoticed. He actually raises an as-applied challenge. And, of course, as the rules are applied to him to this scenario, of course, it seems like he engaged in a drug transaction. And, of course, he couldn't possibly think that the drug transaction was allowed under the prison disciplinary rules. And because he was unnoticed and he clearly violated it, we ask that you reverse the district court's judgment. And I reserve the rest of my time for rebuttal. Why wasn't Crawford charged with trafficking? Your Honor, we don't know why he wasn't charged with trafficking. He could have been charged with trafficking. I believe this is the same scenario as it is with a prosecutor. A prosecutor can choose what offense to charge, what not to charge. And they chose to charge the unauthorized financial transaction here. Okay. Thank you, Ms. Talbot. Ms. Lund. Thank you. Thank you, Your Honor. May it please the court. Due process requires that there be at least some evidence of the prisoner's guilt before good time credits can be revoked. The dividing line between some evidence and no evidence is uncorroborated hearsay. And the warden cannot cite to a single case where uncorroborated hearsay alone was sufficient to meet the some evidence standard. Rather, the hearsay must be corroborated to be sufficient. For example, in Baines v. Daniels, an informant's statement. Counsel, let me tell you what my problem in this case is. There doesn't seem to be any dispute about the what of the transaction, a check from one person to another, from one inmate to another's mother, to be signed over to an aunt. Those are the basic facts of the transaction. There is a dispute about the why of this transaction, whether it reflected drugs or something else. But whether the why matters is a question not of fact, but of what the meaning of the prison's regulation is. Is that a sensible understanding of this? Your Honor, I think the issue here is, you're correct, that, yes, Mr. Carper, you— All right. I'm sorry. Go ahead. So let me tell you why I'm asking this. The Supreme Court's some evidence standard seems to be a rule about what happens when there are disputes, particular disputes of fact. But so far as I can see, the dispute here is about the meaning of the prison regulation, about whether the reason for the transfer of money matters. The state says that the reason doesn't matter, that any financial transaction of this sort for any reason violates the regulation. And that may be right or it may be wrong, but that seems to be wholly a question of state law. Why is that an issue properly raised on a federal collateral attack? Your Honor, I'm not sure I'm fully understanding the question. I think there is a question of fact here because there has to be something that ties the financial transaction to the person being accused of engaging in the financial transaction. Nearly knowing that another inmate engaged in an unauthorized financial transaction is not a violation of the offense at issue. Well, counsel, my worry is that this is not a dispute about facts. It is a dispute about the meaning of the prison regulation. And that's why I'm wondering whether we don't have a problem here, because the Supreme Court keeps saying you can't use 2254 or 2241 to enforce one view or another of state law. That's what I'm trying to get at. I'm worried that this is just a backdoor effort to enforce one person's view of state law rather than the state's view of what state law does. Your Honor, I respectfully disagree with that interpretation. I think in this particular instance... Ms. Lyons? Yes, Your Honor. That's an important question, but I thought that state courts in Indiana are closed to this kind of a case. That they do not provide for any form of judicial review of prison disciplinary proceedings, even those that take away good time credits. And that's why Indiana prisoners' cases go straight from the department to federal court. Your Honor, I'm sorry. I'm not understanding your question. Well, the usual pattern... The pattern we're very familiar with from about 99% of habeas cases that come out of state courts and state convictions is that you have to exhaust remedies in state courts where you can raise issues of state law before you can go to federal court. Under Indiana law, prisoners are not permitted to do so. There is no remedy available for prison discipline in state courts in Indiana. The only remedy, if your liberty is being deprived through an unconstitutional disciplinary proceeding, is to take it to federal court. That may or may not answer Judge Easterbrook's question, but it does set the framework for the answer. Your Honor, that is what happened here. It was taken to federal court. Mr. Crockert exhausted his administrative remedies through the prison system and then filed a habeas petition in the district court. I think that Judge Hamilton is asking, counsel, a somewhat different question, which is whether the Supreme Court's rule that federal habeas corpus can't be used to enforce state law applies when state courts themselves refuse to enforce state law. You might want to address that question. I'm sorry, Your Honor. I'm still not fully understanding the question. Okay. I think you should better go ahead than worry about this because our time is short.  As opposed to the cases that we cite in our brief that give you examples of what the summed evidence standard looks like when it's met, here we actually have the opposite. The entire basis of the board's conviction was a statement by inmate Wolfe, who had been in segregation for 60 days for reasons undisclosed, who decided to implicate himself in a crime, the reasonable inference being that Wolfe somehow benefited from this. By claiming that he sent money to Mr. Crockert's mother to purchase drugs from Mr. Crockert. The only evidence of this supposed transaction is not the drugs, nor corroborating notes or text messages, or the statement of an investigator who had any personal knowledge of the alleged transaction. But rather, the only evidence is Wolfe's uncorroborated hearsay story repeated in the report of conduct and report of investigation. The district court correctly determined that there was no evidence that Mr. Crockert did anything that was prohibited by the rules. Because Wolfe's uncorroborated hearsay allegations lacked sufficient indicia of reliability to meet even the low summed evidence standard applicable here. And this case is analogous to the cases wherein this court found that the summed evidence standard was not met. Ms. Lund, it's Judge Scudder. You don't dispute, do you, that at a hearing, the hearing officer can make a choice as to whose account is more credible? Is, in this particular case, is Mr. Crawford's account more credible? Or, based upon the record, the documentary evidence that was submitted, is Mr. Wolfe's account more credible? Your Honor, Mr. Wolfe did not testify at the disciplinary board hearing. No, I know. The report of conduct was introduced, correct? That's correct. And the hearing officer, in examining it, chose to credit it? Yes, that is correct, Your Honor. So isn't that summed evidence? No, Your Honor, because that's solely... While hearsay evidence can be used at disciplinary hearings, it's not sufficient on its own without something corroborating the hearsay. And the case law is clear on that fact. In all the cases where some evidence was found to be met, there was something corroborating. If, for instance, it was an informant's statement. Has the Supreme Court ever held that in prison disciplinary matters, hearsay must be corroborated? Wolfe v. McDonald is very clear that prisons can use hearsay. And it didn't say, but only corroborated hearsay. Is there some other Supreme Court decision that I should be looking at? No, Your Honor, there is not. But in that case, and in all other cases, there was something more than simply just the hearsay. Whether it be the personal knowledge of the prison official who drafted the report of conduct, or an additional prison employee who corroborated an informant's statement, corroborating text messages, there's always something more than merely the allegations of another inmate. If it were the case that any inmate could find themselves liable just based on unvarnished hearsay of a fellow inmate, then I think that would create a serious problem within the prison system. The case law is clear, and this court has found in, for instance, Meeks v. McBride and Lenia v. Lane, that there has to be something more, something that actually points to the accused's guilt. And here there's simply no evidence that Mr. Crawford engaged in any kind of financial transaction. The mere fact that he knew about the transaction is not the substantive offense with which he was charged. Your time has expired. Thank you, Ms. Lund. Thank you. Ms. Talbot, anything further? Just a couple of points, Your Honor. Yes, opposing counsel mentioned the Meeks case, and I would just like to point out that in Meeks there was actually contrary evidence, so basically evidence directly contradicting the evidence that was introduced by the prison or by the officers. Also, of course, hearsay, as you said before, of course, is admissible during the SCAP proceedings, and here because Wolf exposed himself to liability, given that hearsay has credibility, and also Crawford himself corroborates the fact that there was such a transaction because he admits that Wolf sent money to his mother. And one last point, Your Honor, that it's important to know that the rule against financial transactions between inmates and their families in the Indiana prison system is a rule for the inmate's own protection because generally inmate-to-inmate transactions or any of the above configurations are for extortion and drug trafficking, and the prison system has a significant interest in making sure that those don't happen. We ask that you reverse the district court's decision. Thank you. Thank you very much. The case is taken under advisement.